THOMAS M. CRISPI (*admitted pro hac vice*)
thomas.crispi@afslaw.com
**ARENTFOX SCHIFF LLP**
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone:    212.484.3900
Facsimile:    212.484.3990

SARA T. SCHNEIDER (Bar No. 298103)
sara.schneider@afslaw.com
**ARENTFOX SCHIFF LLP**
555 South Flower Street, 43rd Floor
Los Angeles, CA  90071
Telephone:    213.629.7400
Facsimile:    213.629.7401

STEPHEN COPENHAVER (*admitted pro hac vice*)
Steve.Copenhaver@afslaw.com
**ARENTFOX SCHIFF LLP**
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone:    312.258.5500
Facsimile:    312.258.5600

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GORDOA, an individual; ARIANI REYES, an individual; and B.G., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC., a California corporation; LUXSHARE-ICT, INC., a California corporation; and LUXSHARE PRECISION INDUSTRY CO., LTD., a Chinese Corporation,<br><br>Defendants. | Case No. 3:22-CV-02900-JSC<br><br>**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:    Honorable Jacqueline Scott Corley<br><br>Date:    April 10, 2025<br>Time:    10:00 a.m.<br>Location: Courtroom 8<br><br>Action Filed:    May 16, 2022 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Plaintiff and Dr. Hahn Cannot Simply Ignore Unanimous Scientific Fact in Seeking to Establish General Causation. ................................................................ 2

        1. Dr. Hahn is Not Qualified to Offer a General Causation Opinion. ............. 3

        2. Dr. Hahn's General Causation Opinion is Contrary to All Available Scientific Literature and is Insufficient to Create a Fact Question. ............ 3

        3. Dr. Hahn's Speculative Asides about the Effect of Wireless Headphones Cannot Save his Opinion on General Causation. ................... 6

        4. Dr. Hahn's Reliance on an Alleged Temporal Proximity Does Not Save Plaintiff's Claims. ............................................................................... 7

        5. Dr. Hahn's Purported Differential Diagnosis Cannot Create a Fact Question on Causation. ................................................................................ 8

    B. Plaintiff's Opposition Does Not Demonstrate the Existence of Any Material Fact on her Remaining Claims. ............................................................... 10

        1. Plaintiff's Strict Liability Design Claims Fail because the AirPods Pro Do Not Create Any Risk of Injury. ..................................................... 10

        2. Plaintiff Concedes She Cannot Prove Any Manufacturing Defect. .......... 11

        3. Plaintiff Cannot Prove That Apple Had Knowledge of Any Risk About which it had a Duty to Warn. ........................................................ 11

        4. Plaintiff's Negligence Claim Fails Because there is no Evidence of any Likelihood of Injury. ........................................................................... 11

    C. Plaintiff's Objections Should be Overruled. ......................................................... 12

        1. Applicable OSHA Regulations Are Relevant. .......................................... 12

        2. Dr. Jackler's Declaration is not a Supplemental Report. .......................... 13

        3. Dr. Jackler's Opinions are Well-Supported. .............................................. 13

III. CONCLUSION .................................................................................................................. 14

ARENTFOX SCHIFF LLP

3:22-CV-02900-JSC          -i-          APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*,
  524 F. Supp. 2d 1166 (N.D. Cal. 2007) ................................................................................. 3

*California ex rel. Brown v. Safeway, Inc.*,
  615 F.3d 1171 (9th Cir. 2010) ............................................................................................... 7

*Cabrera v. Cordis Corp.*,
  134 F.3d 1418 (9th Cir. 1998) ............................................................................................. 13

*Chavez v. Glock, Inc.*,
  207 Cal. App. 4th 1283 (2012) ............................................................................................ 12

*Clausen v. M/V NEW CARISSA*,
  339 F.3d 1049 (9th Cir. 2003) ..................................................................................... 4, 7, 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ........................................................................................ passim

*Domingo ex. Rel. Domingo v. T.K.*,
  289 F.3d 600 (9th Cir. 2002) ......................................................................................... 2, 4, 6

*Enborg v. Ethicon*,
  No. 20-02477, 2022 WL 800879 (E.D. CA. May 24, 2022) ................................................ 9

*Harris v. Extendicare Homes, Inc.*,
  829 F. Supp. 2d 1023 (W.D. Wash. 2011) .......................................................................... 13

*Henricksen v. ConocoPhillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009) ............................................................................. 5

*Howard v. Omni Hotels Mgmt. Corp.*,
  203 Cal. App. 4th 403 (2012) .............................................................................................. 10

*In re Incretin-Based Therapies Prod. Liab. Litig.*,
  524 F. Supp. 3d 1007 (S.D. Cal. 2021) ................................................................................. 8

*Lust by and through Lust v. Merrell Dow Pharm.*,
  89 F.3d 594 (9th Cir. 1996) ............................................................................................. 4, 5

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2nd Cir.2008) ................................................................................................. 7

*Merrill v Navegar*,
  26 Cal. 4th 465 (2001) ........................................................................................................ 12

*Messick v. Novartis Pharm. Corp.*,
  747 F.3d 1193 (9th Cir. 2014) ............................................................................................... 9

*Monroe*, 766 F. Supp. 2d at 1035 ............................................................................................. 11

*In re Nexium Esomeprazole*,
  662 Fed. Appx. 528 (9th Cir. 2016) ...................................................................................... 5

*Pac. Dawn LLC v. Pritzker*,
  831 F.3d 1166 (9th Cir. 2016) ............................................................................................. 11

*Platt v. Holland Am. Line Inc.*,
  NO. 20-00062, 2023 WL 2938172 (W. D. Wash. Apr. 13, 2023) ........................................ 9

*Progressive Sols., Inc. v. Stanley*,
  No. 16-CV-04805-SK, 2018 WL 1989547 (N.D. Cal. Mar. 8, 2018) ................................. 13

*Sanderson v. Int'l Flavors and Fragrances, Inc.*,
  950 F. Supp. 981 (C.D. Cal. 1996) ................................................................................... 7, 8

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
  318 F. Supp. 2d 879 (C.D. Cal. 2004) .................................................................................. 8

*Soule v. Gen. Motors Corp.*,
  8 Cal. 4th 548 (1994) .......................................................................................................... 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices &
  Prods. Liab. Litig.*,
  754 F. Supp. 2d 1208 (C.D. Cal. 2010) .............................................................................. 11

*Trejo v. Johnson & Johnson*,
  13 Cal. App. 5th 110 (Cal. App. 2017) .............................................................................. 10

*In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Prod. Liabl. Litig.*,
  424 F. Supp. 3d 781 (N.D. Cal. 2020) ............................................................................. 4, 5

*Wendell v. GlaxoSmithKline LLC*,
  858 F.3d 1227 (9th Cir. 2017) ............................................................................................... 4

**Other Authorities**

29 CFR 1910.95 ........................................................................................................................ 12

Fed. R. Civ. P. 56 ..................................................................................................................... 13

## I. INTRODUCTION

Plaintiff's case fails because she lacks any admissible evidence establishing that a seconds-long exposure to noise under 120 dB is capable of causing *any degree* of acute hearing loss, let alone the type of profound, permanent hearing loss and related symptoms sustained by B.G. in this case. In opposing Apple's motion for summary judgment, Plaintiff fails to address or rebut any of the following facts which, now being undisputed, compel entry of judgment in Apple's favor:

- The topic of noise-induced hearing loss ("NIHL") has been the subject of exhaustive scientific and medical research over the past several decades, resulting in approximately 10,000 peer-reviewed articles.

- That research has conclusively determined that the threshold for even mild, acute hearing loss is 140 decibels (dB), and the threshold for the type of traumatic hearing injury alleged by Plaintiff in this case is in excess of 180 dB.

- The peak sound level to which B.G. was exposed in this case did not exceed 113.5 dB, less than 100,000 times the sound level that peer-reviewed literature has determined is necessary to cause the type of injury Plaintiff alleges.

- There is no peer-reviewed medical literature that has determined, or even suggested, that the type of injury B.G. claims in this case can occur from a brief exposure to noises at levels B.G. experienced.

- Wireless Bluetooth headphones like the AirPods Pro have been used regularly by hundreds of millions of people for years. There has *never* been any report in the medical or scientific literature of an injury similar to that alleged by B.G. claimed to have been caused by sound exposure from such a product.

- Dr. Hahn has never researched or published on the topic of hearing loss causation.

- Noise-induced hearing injuries result in visible damage to the hair cells inside the ear. B.G. did not sustain any damage to his hair cells and there was no other visible sign of physical injury to B.G.'s ear.

- Viruses, including COVID-19, are by far the most common cause of the type of hearing injury B.G. sustained in this case, particularly amongst adolescents.

- B.G. had symptoms consistent with COVID-19 at the time his hearing injury was diagnosed.

Rather than seek to dispute any of the foregoing facts, Plaintiff seeks to manufacture a question of fact by arguing, in a manner contrary to controlling law, that the absence of any reliable foundation underlying her expert's opinion actually *lowers* the burden of proof that Plaintiff must meet. In essence, Plaintiff argues that because her expert has reached an opinion that is contrary to all available scientific and medical literature, her expert does not need to support his opinion with anything other than his own say so. Plaintiff's argument finds no support in the law. Controlling Ninth Circuit precedent confirms that Dr. Hahn's failure to adequately support his opinion with reference to available peer-reviewed literature renders Plaintiff unable to establish causation as a matter of law and entitles Apple to judgment in its favor.

## II.   ARGUMENT

### A.   Plaintiff and Dr. Hahn Cannot Simply Ignore Unanimous Scientific Fact in Seeking to Establish General Causation.

Plaintiff does not dispute that, to prevail on any of her claims against Apple, she must prove general causation and must do so through the admissible opinion of a qualified expert. Apple has moved to exclude the opinions of Plaintiff's sole causation expert—Dr. Hahn—both because he is unqualified to render them, and because Dr. Hahn's opinion on general causation is contradicted by the unanimous opinion of the entire medical and scientific community. For those reasons alone, Apple's motion for summary judgment should be granted. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995) ("*Daubert II*") (affirming summary judgment where district court excluded plaintiff's expert's causation opinion); *Domingo ex. Rel. Domingo v. T.K.*, 289 F.3d 600 (9th Cir. 2002) (same).

In her effort to avoid dismissal, Plaintiff claims that Dr. Hahn's opinion on general causation is reliable, and that Apple's Motion should be denied, not because Dr. Hahn is able to point to peer-reviewed or other scientific evidence to support his opinion but, remarkably, because he cannot. Indeed, it is Plaintiff's apparent position that because Dr. Hahn conjured an opinion so singular, that he alone is able to attest to its validity. But the foundational requirements for expert testimony are not subject to nullification at the whim of Plaintiff or her expert, and Plaintiff's failure to point to any support for Dr. Hahn's opinion in the voluminous peer-reviewed literature means Plaintiff

is unable to meet her burden on causation as a matter of law.

### 1.   Dr. Hahn is Not Qualified to Offer a General Causation Opinion.

At the outset, Plaintiff's opposition to Apple's motion fails to establish that Dr. Hahn is qualified to analyze the voluminous epidemiological data to render any reliable expert opinion on general causation. Plaintiff does not dispute that Dr. Hahn has never researched or published on the topic of hearing loss causation, despite that being the primary topic on which he is designated as an expert. *See* ECF No. 196 at 10-12. Although Plaintiff points out that Dr. Hahn is a clinical physician, neither Plaintiff nor Dr. Hahn indicate that he has any relevant experience or expertise in assessing the risk associated with exposure to noise, the mechanisms or causes of noise-induced hearing loss, or epidemiology, nor do they indicate that Dr. Hahn is even familiar with the voluminous research on that topic that has been published over the last several decades. That alone renders Dr. Hahn unqualified to offer a general causation opinion. *See In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (excluding general causation opinion of clinical physician with "no relevant research experience" who did "not have any specialized epidemiology training" and who had "not published any research" on the relevant causation question) (citing *Daubert II*, 43 F.3d at 1317).

### 2.   Dr. Hahn's General Causation Opinion is Contrary to All Available Scientific Literature and is Insufficient to Create a Fact Question.

Plaintiff does not dispute that the unanimous scientific literature—relying on decades of epidemiologic data and medical research—concludes that the type of hearing injury B.G. sustained requires exposure to noise pressure levels orders of magnitude higher than B.G. sustained. Plaintiff instead argues that Dr. Hahn is entitled to ignore that evidence altogether. ECF No. 209 at 10 (arguing that "no epidemiological studies or laboratory data" are required to support a causation opinion). Plaintiff is wrong.

The well-settled law in the Ninth Circuit is that the two primary ways to establish the reliability of an expert's causation opinion is through the expert's own pre-litigation studies or by establishing "that the expert's research has been subjected to peer review." *Daubert II*, 43 F.3d at 1318. Because Plaintiff concedes that Dr. Hahn's opinion is supported by neither category of

evidence, there is no triable factual issue as to causation. *See id.* at 1318-19. Plaintiff has not and cannot point to any peer-reviewed literature, *see id.*; any "studies establish[ing] a relationship between the amount of exposure [to the stimulus] and [the alleged injury]," *In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Prod. Liabl. Litig.*, 424 F. Supp. 3d 781, 796 (N.D. Cal. 2020) ("*In re Viagra*"); any "evidence of widespread acceptance" of Dr. Hahn's causation theory, *Domingo*, 289 F.3d at 606; any publication of Dr. Hahn's theory in the medical or scientific literature, *see id.*; or even any "objective source demonstrating that [Dr. Hahn's] method and premises were generally accepted as sound by a recognized minority" of experts in his field, *Lust by and through Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 597-98 (9th Cir. 1996).

Seeking to avoid the import of this long line of cases, Plaintiff seeks refuge in two cases—*Clausen* and *Wendell*—that are entirely inapposite. The two cases on which Plaintiff relies carve out a very narrow, and inapplicable, exception to the general rule announced by the Ninth Circuit in *Daubert II*. Specifically, those decisions hold that, in the rare circumstance in which the general causation question at issue had never been the subject of scientific study, the absence of peer-reviewed literature is not necessarily fatal to an expert's causation opinion, so long as: (1) there are good reasons why there was no peer-reviewed literature (e.g., the disease at issue is too rare to study); and (2) there was some other objective, verifiable evidence supporting the causation opinion. *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1060-61 (9th Cir. 2003), as amended on denial of reh'g (Sept. 25, 2003) (holding that absence of peer-reviewed literature was not fatal to causation opinion where exposure was "rare enough [that] opportunities for scholarly research are few" and where expert supported his opinion with other "objective, verifiable evidence"); *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1231, 1236-37 (9th Cir. 2017) (finding causation opinion admissible without supporting peer-reviewed literature where disease at issue was so uncommon that the "scientific community [had] not invested substantial time or resources into investigating [its] causes," and because the expert relied upon "other published studies and articles" from which he prepared a "statistical analysis" to support his opinion).

The circumstances in *Clausen* and *Wendell* that justified the courts' limited exception to *Daubert II* are simply not present here. Indeed, unlike the injuries alleged in those cases, noise-

induced hearing injury is diagnosed more than 66,000 times annually in the U.S. alone. ECF No. 197 at 6. Not only is such a condition capable of being studied, it has been the subject of exhaustive medical and scientific research over the past several decades, resulting in thousands of peer-reviewed articles concerning its causes. ECF No. 196-2, Exhibit H at ¶¶49-51.

As much as Plaintiff would like this Court to believe otherwise, there simply is no case—and Plaintiff has cited to none—that allows Dr. Hahn to ignore available epidemiological data and medical research on the very topic on which he is designated to testify. Instead, controlling precedent holds that where, as here, the relationship between the stimulus (noise exposure) and alleged injury (traumatic hearing injury) has been the subject of scientific research, a causation expert's opinions *must* be either supported by that literature or the expert must specifically explain, through reasoned analysis and citation to objective, verifiable sources, how he came to a different conclusion. *In re Nexium Esomeprazole*, 662 Fed. Appx. 528, 530 (9th Cir. 2016) (affirming summary judgment where expert's opinion was inconsistent with published articles and expert "did not explain how he came to a different conclusion than the studies' authors"); *Lust*, 89 F.3d at 598 (affirming summary judgment, finding causation expert's opinion to be unreliable where expert "fails to identify and defend the reasons that his conclusions are anomalous" from published research). Dr. Hahn does neither.

Because Dr. Hahn's opinions are contrary to "every published study" on the relevant topic, and "there doesn't appear to be a single scientist who has concluded that [exposure to noise levels under 120 dB] causes [traumatic hearing injury]," there is no triable issue as to general causation. *See Daubert II*, 43 F.3d at 1314, 1318 (affirming summary judgment where "no one in the scientific community—except for defendants' experts—has deemed [the expert's theories] worthy of verification, refutation or even comment."). Causation opinions that have "no interpretation by anyone other than plaintiffs' experts[,]" *In re Viagra*, 424 F. Supp. 3d at 798-99, have "been rejected by the overwhelming majority of the scientific community[,]" *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1166 (E.D. Wash. 2009), and fly "in the face of the [applicable] scientific literature[,]" *see id.*, are routinely excluded.

### 3. Dr. Hahn's Speculative Asides about the Effect of Wireless Headphones Cannot Save his Opinion on General Causation.

Recognizing that Dr. Hahn is unable to support his opinion on general causation with any reference to peer-reviewed medical or scientific literature, Plaintiff attempts to justify Dr. Hahn's opinion by claiming that the available literature—which unanimously contradicts his opinion—is irrelevant because B.G. was exposed to sound via a wireless headphone, as opposed to some other source. ECF No. 209 at 12. According to Plaintiff, the alleged "novelty" of a wireless headphone— a product regularly used without incident by hundreds of millions of people and that has been commercially available for decades—renders decades of scientific research about noise exposure inapplicable because a wireless headphone supposedly "deliver[s] noise directly to the ear canal" unlike a "speaker in the room." *Id.* Plaintiff's argument is legally and factually baseless.

As a factual matter, Plaintiff's attempted justification of Dr. Hahn's opinion is wrong because Plaintiff's experts' measurements of the noise level emitted by the AirPods Pro—which did not exceed 113.5 dB—were taken *at the ear canal*. As Plaintiff's audio engineering expert explained, the sound output of the AirPods Pro was measured using specific tools which "enabled the AirPod[s] Pro to be securely fitted to the concha and ear canal" of the test device, permitting a measurement that "**closely mimics a human ear**." ECF No. 208-8, Casali 7.26.24 Report at 9 (emphasis added). Therefore, the measurements obtained by Plaintiff's experts in this case already addressed, and accounted for, the alleged (yet unspecified) differences in the effect a noise would have when delivered at the ear, as opposed to from a "speaker in the room." ECF No. 209 at 12.

As a legal matter, Dr. Hahn does not support his off-handed speculation about the effect of a noise exposure at the ear (as opposed to from a noise source at some unspecified distance) with any analysis, citation to applicable medical or scientific literature, or, dispositively, to *any* type of "objective, verifiable evidence" that is required to support an expert opinion. *See Daubert II*, 43 F.3d at 1318. Instead, it appears to be nothing more than Dr. Hahn's idle speculation, untethered to any reliable scientific methodology. Again, Plaintiff cannot ignore the rules that govern expert evidence admissibility to create an issue of fact on summary judgment. *See Domingo*, 289 F.3d at 607 (affirming summary judgment where expert did not base opinion on "objective, verifiable

evidence and scientific methodology," but was rather simply the experts "*ipse dixit*"); *see also California ex rel. Brown v. Safeway, Inc.*, 615 F.3d 1171, 1181 n. 4 (9th Cir. 2010) ("[E]xpert's opinions that are…based on speculation … are inadmissible at trial and are inappropriate material for consideration on motion for summary judgment." (citing *Major League Baseball Properties, Inc. v. Salvino, Inc.,* 542 F.3d 290, 311 (2nd Cir.2008) (quotations omitted)).

### 4. Dr. Hahn's Reliance on an Alleged Temporal Proximity Does Not Save Plaintiff's Claims.

Plaintiff's reliance on the apparent temporal proximity between the Amber Alert and the discovery of B.G.'s ear injury is also insufficient to create an issue of fact on causation. Despite Plaintiff's reliance on it to support Dr. Hahn's opinion, a temporal connection between an exposure and an injury is irrelevant to a determination of general causation in the absence of any objective, verifiable evidence supporting general causation in the first place. *See Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F. Supp. 981, 1004 (C.D. Cal. 1996) (excluding causation opinion based in part on "temporal connection" where causation expert had not "conducted any research on the ability of [the exposure] to cause the injuries" and where expert did not base his opinion on "published research" or "any other objective sources."); *Clausen*, 339 F.3d at 1059-60 (noting that expert cited to objective, verifiable evidence establishing causation). Accordingly, unless and until an expert offers independent evidence that an alleged exposure is capable of causing the alleged injury, no temporal connection can establish a causal relationship.

Plaintiff has not identified *any* legal authority supporting her position that temporal proximity *alone* is sufficient to establish general causation. Yet, remarkably, that is exactly what Dr. Hahn admits he seeks to do here. *See* ECF No. 196-2, Exhibit I at 88:17-89:7 ("Q: Can you explain for us, please, how then a relatively brief exposure to sound…was nonetheless capable of rupturing the [inner ear]…?" "A: …[W]hat we do know is that immediately after the tone came through his ear [] he had symptoms consistent with [PLF]. Q: Anything else? A: **I think that's it**.").

Because Dr. Hahn has not established that—or even researched whether—a brief exposure to sounds under 120 dB are capable of causing the type of hearing injury B.G. sustained, the

3:22-CV-02900-JSC — - 7 - — APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

temporal connection between his exposure and the discovery of his injury does not meet Plaintiff's burden. *See Sanderson*, 950 F. Supp. at 1004; *see also Daubert II*, 43 F. 3d at 1319 (affirming summary judgment where expert's causation opinion was based only on expert's review of medical records, from which he determined the timing between the alleged exposure and injury).

### 5. Dr. Hahn's Purported Differential Diagnosis Cannot Create a Fact Question on Causation.

Plaintiff's final effort to salvage her claims is to suggest that, because Dr. Hahn performed a purported "differential diagnosis," there necessarily exists a fact question on the issue of general causation. Plaintiff's argument misstates the law. It is not the *fact* that an expert claims to have performed a differential diagnosis that determines whether an expert has proffered a reliable opinion on causation, but instead whether the expert has done so *reliably* and in a way that comports with applicable medical and scientific literature. Dr. Hahn has not done so here.

As an initial matter, Plaintiff ignores the fact that a differential diagnosis alone cannot establish general causation, as a reliable differential diagnosis may include as potential causes only those that have been previously demonstrated as being "generally capable of causing the patient's symptoms." *Clausen*, 339 F.3d at 1057-58. Because a physician performing a differential diagnosis may only consider causes capable of causing the alleged injury, the process itself cannot be used "to prove general causation" in the first instance. *In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1051 (S.D. Cal. 2021); *see In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 892 (C.D. Cal. 2004) ("*In re Silicone*") (entering summary judgment and holding that it is "important to note…that [a] differential diagnosis cannot demonstrate general causation"). In this case, Dr. Hahn simply assumed, in defiance of the unanimous opinion of the entire scientific community, that a brief exposure to sound under 120 dB was capable of causing the types of injuries B.G. sustained. That was improper and renders his differential diagnosis unreliable as a matter of law. *See In re Silicone*, 318 F. Supp. 2d at 892 (finding that a differential diagnoses "assumes, without proving, that all potential causes considered are capable of causing the condition at issue.")

The cases Plaintiff cites in her opposition actually support Apple's argument, as each makes

1  clear that a differential diagnosis is used to render an opinion as to *specific* causation, and only after
2  general causation is established. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th
3  Cir. 2014) (holding expert's differential diagnosis to determine specific causation was reliable
4  when it was based on "epidemiologic studies [which] have established a firm foundation for a
5  strong association between [the plaintiff's exposure] and the development of [the condition at
6  issue]"); *Enborg v. Ethicon*, No. 20-02477, 2022 WL 800879, *11 (E.D. CA. May 24, 2022)
7  (precluding expert from offering any opinions on general causation based on differential diagnosis
8  but permitting opinion on specific causation where expert had based opinion on a "relevant data set
9  and a methodology that the Ninth Circuit has deemed reliable"); *Platt* v. *Holland Am. Line Inc.*,
10 NO. 20-00062, 2023 WL 2938172, *6-7 (W. D. Wash. Apr. 13, 2023) (finding opinion as to
11 specific causation based on differential diagnosis reliable in case involving seizure allegedly caused
12 by electric shock where evidence established that "electrocution has been known to cause seizures"
13 and where there was "no other causal explanation" for the injury in the record).

14       Dr. Hahn's purported differential diagnosis also fails to create an issue of fact because Dr.
15 Hahn did not reliably rule out COVID as the cause of B.G.'s injury. *See* ECF No. 196 at 19-20.
16 Rather than substantively address that argument in her opposition, Plaintiff simply doubles down
17 on her demonstrably false premise that B.G. did not have any symptoms that "may have heralded
18 a COVID-19 infection or other viral illness." ECF No. 209 at 8. But, as Apple argued, that is not
19 a reliable basis on which to rule out a viral cause of B.G.'s injury, as: (1) the undisputed evidence
20 is that many people, particularly adolescents, who sustained COVID-related hearing loss are
21 asymptomatic, and (2) B.G. in fact *did* have symptoms consistent with COVID-19 at the time his
22 hearing injury was discovered (i.e., hearing loss alone, or accompanied with tinnitus, aural fullness,
23 ear pain, and fatigue and/or nausea). *See* ECF No. 196 at 19-20; *see also* ECF No. 197 at 13.
24 Because Dr. Hahn has failed to offer reliable reasons for "rejecting alternative hypotheses" which
25 were "founded on more than subjective beliefs and unsupported speculation," even his specific
26 causation opinion fails. *See Messick*, 747 F.3d at 1198.

ARENTFOX SCHIFF LLP

### B. Plaintiff's Opposition Does Not Demonstrate the Existence of Any Material Fact on her Remaining Claims.

#### 1. Plaintiff's Strict Liability Design Claims Fail because the AirPods Pro Do Not Create Any Risk of Injury.

Plaintiff takes issue with Apple's reliance on the risk-utility test to analyze Plaintiff's strict liability design claim—claiming instead that the consumer expectations test should apply. But Plaintiff's disclosure of four non-causation expert witnesses to offer opinions as to the design and performance of the AirPods Pro defeats Plaintiff's own argument. Plaintiff does not appear to dispute that expert testimony is required to "understand[] the pros and cons of the design defect claim[.]" *Trejo v. Johnson & Johnson*, 13 Cal. App. 5th 110, 167 (Cal. App. 2017). In such circumstances, the various considerations regarding the design of a product "c[an]not correctly be evaluated under the consumer expectation test." *Id.* Indeed, the consumer expectations test is inapplicable as a matter of law in such circumstances, as the introduction of experts "would invite circumvention of the rule that the risks and benefits of a challenged design must be carefully balanced whenever the issue of design defect goes beyond the common experience of the product's users." *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 424 (2012) (citing *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994)).

Plaintiff ignores the foregoing, arguing only that the consumer expectations test may also apply because a consumer can form expectations about whether "his or her AirPods Pro [were] capable of playing piercing sounds, such as Amber Alerts, that lead to hearing loss." ECF No. 209 at 15. That is not the applicable test, as the fact that an injury occurred while using a product is alone not sufficient to create a fact question under the consumer expectations test. If that were the case, the consumer expectation test always would apply, and every product would be found to have a design defect. *See Soule*, 8 Cal.4th at 568, n. 5 ("[W]e have consistently held that manufacturers are not insurers of their products; they are liable in tort only when 'defects' in their products cause injury.").

Regardless of whether Plaintiff's strict liability design defect claim is governed by the risk-utility or consumer expectations test, Plaintiff does not dispute that she needs to adduce evidence that the AirPods Pro created a risk of injury to Plaintiff to survive summary judgment. Undisputed

medical and scientific research has established that AirPods Pro cannot generate sounds that even approach levels necessary to create a risk of acute permanent hearing loss. Dr. Hahn's baseless opinions cannot change that immutable fact. And, although Plaintiff cites in her opposition to the opinions of Dr. Tarr and Dr. Casali (*see* ECF No. 209 at 16-18), those witnesses do not assist Plaintiff in meeting her burden on defect under the circumstances, as neither of them have offered any opinion that the AirPods Pro created any hazard or risk to B.G. at all.

**2.      Plaintiff Concedes She Cannot Prove Any Manufacturing Defect.**

Apple moved for summary judgment on Plaintiff's manufacturing defect claims, arguing that Plaintiff lacked any evidence to support them. Plaintiff has failed to respond to that argument, effectively conceding that her manufacturing defect claim cannot proceed to trial. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that failure to raise an argument in opposition to a defendant's motion for summary judgment waives the argument).

**3.      Plaintiff Cannot Prove That Apple Had Knowledge of Any Risk About which it had a Duty to Warn.**

Plaintiff's lack of evidence to support her failure-to-warn claim makes clear that Apple is entitled to summary judgment. As Plaintiff now concedes, a duty to warn arises only where the manufacturer "knows, or should have known, of the danger of the product at the time the product was distributed." ECF No. 209 at 20, citing *In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1208, 1221-22 (C.D. Cal. 2010). Plaintiff does not even argue, let alone point to any admissible evidence, that Apple "knew or should have known" of a risk associated with the audio output from the Amber Alert. That is particularly true since the sound levels AirPods Pro can produce are substantially below those that have *ever* been reported in the medical and scientific literature as necessary to create *any degree* of acute hearing injury. Absent such evidence, Plaintiff cannot prove that Apple "knew or should have known" of any such risk, and Plaintiff's warnings claims fail as a matter of law. *See Monroe*, 766 F. Supp. 2d at 1035.

**4.      Plaintiff's Negligence Claim Fails Because there is no Evidence of any Likelihood of Injury.**

For the same reasons, Plaintiff has failed to create any triable issue of fact on her negligence

ARENTFOX SCHIFF LLP

claim. As Plaintiff concedes, a negligence theory requires proof that the manufacturer did not take reasonable precautions to design a safe product considering the "likelihood of harm to be expected from [the product]." *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1305 (2012); *see also Merrill v Navegar*, 26 Cal. 4th 465, 479 (2001) (affirming summary judgment in favor of manufacturer on negligent design claim). In light of the undisputed evidence that the Amber Alert does not produce sound levels anywhere approaching the levels that applicable medical and scientific literature have deemed capable of causing even minor hearing injury, Plaintiff has not identified any evidence that Apple disregarded or otherwise failed to account for any known "likelihood of harm." *See Merrill*, 26 Cal. 4th at 479.

### C. Plaintiff's Objections Should be Overruled.

Finally, Apple briefly addresses certain evidentiary objections to evidence cited in Apple's motion for summary judgment, all of which should be overruled.

#### 1. Applicable OSHA Regulations Are Relevant.

Plaintiff's objection to Apple's citations to OSHA standards should be overruled for several reasons. First, Dr. Jackler and Dr. Fligor reference OSHA standards to demonstrate the well-established scientific fact that exposures to sound under 120 dB cannot cause instantaneous hearing loss. That fact is so well established that government agencies, including OSHA, permit unprotected daily exposure to noise at 120 dB for 7 minutes and 30 seconds—over 45 times longer than B.G.'s one-time exposure to the Amber Alert. Apple understands why the Plaintiff may not wish for the Court to acknowledge that fact, but she has offered no legal basis for its exclusion.

Second, Plaintiff's assertion that "OSHA regulations are narrowly tailored to address workplace safety concerns that arise in specific industry settings" is entirely unfounded. ECF No. 209 at 8. OSHA standards provide well-accepted, evidence-based guideposts for noise exposure for the population at large. *See* 29 CFR 1910.95; ECF No. 196-2, Exhibit H at ¶¶60-64. Further, it is well-established that the safety of noise exposure is dictated by sound level and the duration of sound, not by an individual's location or activity. ECF No. 196-2, Exhibit H at p. 25. In other words, the impact of a 10-second exposure to a 120-decibel noise level from a chain saw is the same, regardless of whether the exposure occurs at work, at home, or anywhere else. Plaintiff has

not provided any evidence to the contrary, further undercutting her objection to this evidence.

Finally, the case on which Plaintiff relies for her objection—*Cabrera v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998)—does not support Plaintiff's argument. If anything, *Carbrera* further supports the exclusion of Dr. Hahn's testimony. But nothing in *Cabrera* justifies Plaintiff's objections to the OSHA standards.

### 2.     Dr. Jackler's Declaration is not a Supplemental Report.

Plaintiff also objects to Dr. Jackler's declaration submitted in connection with Apple's motion based on a disingenuous argument that it constitutes a "supplemental report." It is no such thing and, notably, Plaintiff has not identified (and cannot identify) any supposedly new opinions. Apple attached a sworn declaration from Dr. Jackler so that his opinions could be presented to this Court in admissible form so that they could be considered in ruling on Apple's pending motions. This is routine in motion practice in federal court, and if Apple had not done so, the reports may not have constituted admissible evidence for summary judgment purposes. *See Progressive Sols., Inc. v. Stanley*, No. 16-CV-04805-SK, 2018 WL 1989547, at *8 (N.D. Cal. Mar. 8, 2018) (holding that unsworn expert reports are not admissible evidence for purposes of Rule 56); *see also Harris v. Extendicare Homes, Inc.*, 829 F. Supp. 2d 1023, 1027 (W.D. Wash. 2011) (collecting cases and noting that courts in this circuit "have routinely held that unsworn expert reports are inadmissible"); *see also* Fed. R. Civ. P. 56(c)(4).[1] Plaintiff's objection to Dr. Jackler's declaration is without foundation and should be overruled.

### 3.     Dr. Jackler's Opinions are Well-Supported.

Finally, Plaintiff makes a cursory and unsupported attack on Dr. Jackler's opinions, suggesting that they constitute "unsupported speculation." ECF No. 209 at 3. Plaintiff's argument is entirely without foundation. Plaintiff does not dispute that Dr. Jackler, who served as Stanford University's Chief COVID epidemiologist, is among the world's foremost experts on hearing loss causation or that he is qualified to render his opinions. Instead, Plaintiff argues that Dr. Jackler's opinion that B.G.'s hearing injury was most likely viral in origin constitutes "ipse dixit guesswork."

---

[1] Apple notes Plaintiff's attachment of, and citation to, her experts' unsworn expert reports throughout her oppositions to Apple's motions. Apple objects to such reports as inadmissible hearsay.

*Id.* Not so.

In assessing causation, Dr. Jackler first determined that it is "medically impossible for a less than a minute long exposure" to noise level less than 120 dB to have caused B.G.'s injuries, in light of the undisputed scientific evidence regarding the effect of noise exposure on the human ear. ECF No. 196-2, Exhibit H at ¶85. Dr. Jackler then considered a number of potential causes and, based on B.G.'s symptoms and presentation, was able to rule out all except for a viral infection. *Id.* at ¶86. It is undisputed viruses, including COVID-19, cause the type of hearing injury B.G. sustained in this case, and that the "vast majority" of such injuries are caused by viral infection. *Id.* at ¶74. Dr. Jackler explains at length the reasons he believes COVID-19 is the most likely virus to have caused B.G.'s injury, including it well-documented history of causing such injuries, its prevalence in the community in which B.G. was injured, and B.G.'s symptoms. *Id.* at ¶¶83-84, 86. Unlike Dr. Hahn, Dr. Jackler supports his opinions with more than 100 citations to relevant medical and scientific literature. *See id.* at p. 46-53.

Dr. Jackler's opinion is well-supported and reliable. Plaintiff's cursory objections to it should be overruled.

### III.   CONCLUSION

For the foregoing reasons, and those set forth in its Motion, Apple respectfully requests that the Court grant Apple's Motion for Summary Judgment and enter judgment in its favor.

Dated: March 19, 2025.                    **ARENTFOX SCHIFF LLP**

By: *[signature: Sara Taylor Schneider]*
Thomas M. Crispi
Sara T. Schneider
Stephen Copenhaver

Attorneys for Defendant
APPLE INC.