THOMAS M. CRISPI (*admitted pro hac vice*)
thomas.crispi@afslaw.com
**ARENTFOX SCHIFF LLP**
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone:    212.484.3900
Facsimile:    212.484.3990

SARA T. SCHNEIDER (Bar No. 298103)
sara.schneider@afslaw.com
**ARENTFOX SCHIFF LLP**
555 South Flower Street, 43rd Floor
Los Angeles, CA  90071
Telephone:    213.629.7400
Facsimile:    213.629.7401

STEPHEN COPENHAVER (*admitted pro hac vice*)
Steve.Copenhaver@afslaw.com
**ARENTFOX SCHIFF LLP**
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone:    312.258.5500
Facsimile:    312.258.5600

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS GORDOA, an individual; ARIANI REYES, an individual; and B.G., a minor, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE, INC., a California corporation; LUXSHARE-ICT, INC., a California corporation; and LUXSHARE PRECISION INDUSTRY CO., LTD., a Chinese Corporation, <br><br> Defendants. | Case No. 3:22-CV-02900-JSC <br><br> **APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING** <br><br> Judge:     Honorable Jacqueline Scott Corley <br><br> Date:      April 10, 2025 <br> Time:      10:00 a.m. <br> Location:  Courtroom 8 <br><br> Action Filed:    May 16, 2022 |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC

APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. Plaintiff's Opposition Confirms that Dr. Hahn Has Not and Cannot Offer a Reliable General Causation Opinion. ........................................................................ 2

        1. Dr. Hahn is Not Qualified to Opine on General Causation. ........................ 2

        2. Plaintiff's Opposition Confirms that Dr. Hahn Did Not Undertake Any Analysis of General Causation. ............................................................ 3

        3. Any General Causation Opinion that Dr. Hahn Purports to Offer is not Reliable Under Controlling Ninth Circuit Precedent. ........................... 3

        4. Dr. Hahn's So-Called Differential Diagnosis is not a Sufficient or Reliable Substitute for an Opinion on General Causation. ........................ 4

            a. Dr. Hahn Cannot Use a Differential Diagnosis to Establish General Causation. ............................................................................. 4

            b. Even in the Absence of Peer-Reviewed Literature, Some Objective Validation of Dr. Hahn's Opinion is Required. ............... 6

            c. Dr. Hahn's Sole Reliance on the Temporal Connection between the Amber Alert and the Discovery of B.G.'s Symptoms is Misplaced. ............................................................... 7

            d. Dr. Hahn's Observation that the AirPods Pro "Sit in the Ear" Cannot Save his Baseless Opinion. ......................................... 9

    B. Dr. Hahn's Specific Causation Opinions are Unreliable and Inadmissible. ......... 10

    C. If Any Questions Remain, the Court Should Hold a Daubert Hearing to Address Them. ........................................................................................................ 11

III. CONCLUSION .................................................................................................................... 12

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC   -i-   APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*,
   524 F. Supp. 2d 1166 (N.D. Cal. 2007) ............................................................................... 2

*Cano v. Continental Airlines Inc.*,
   193 Fed. Appx. 665 (9th Cir. 2006) .................................................................................. 11

*Clausen v. M/V NEW CARISSA*,
   339 F.3d 1049 (9th Cir. 2003) .................................................................................... 5, 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ...................................................................................... *passim*

*In re Incretin-Based Therapies Prod. Liab. Litig.*,
   524 F. Supp. 3d 1007 (S.D. Cal. 2021) ............................................................................ 5, 6

*Johnson v. City of San Jose*,
   No. 21-CV-01849-BLF, 2023 WL 8852489 (N.D. Cal. Dec. 21, 2023) ............................ 11

*Messick v. Novartis Pharm. Corp.*,
   747 F.3d 1193 (9th Cir. 2014) .......................................................................................... 10

*Platt* v. *Holland Am. Line Inc.*,
   NO. 20-00062, 2023 WL 2938172 (W. D. Wash. Apr. 13, 2023) ...................................... 8

*Sanderson v. Int'l Flavors and Fragrances, Inc.*,
   950 F. Supp. 981 (C.D. Cal. 1996) ..................................................................................... 8

*In re Silicone Gel Breast Implants Prod. Liab. Litig.*,
   318 F. Supp. 2d 879 (C.D. Cal. 2004) ................................................................................ 4

*Turpin v. Merrell Dow Pharm. Inc.*,
   959 F.2d 1349 (6th Cir. 1992) ............................................................................................ 4

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) .................................................................................... 5, 6, 7

**Other Authorities**

Fed. R. Civ. P. 702 ................................................................................................................ 2, 4

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC                             -ii-                   APPLE INC.'S REPLY IN SUPPORT OF ITS
                                                                     MOTION TO EXCLUDE CAUSATION
                                                                     OPINIONS OR, IN THE ALTERNATIVE,
                                                                     FOR A *DAUBERT* HEARING

## I.   **INTRODUCTION**

Plaintiff's opposition seeks to turn the standard for the admissibility of expert testimony on its head. Plaintiff concedes that Dr. Hahn opines about a "novel" theory of the cause of B.G.'s hearing injury without conducting any research of his own, without relying on any published research studies or epidemiological data, without identifying any instance in which his novel theory has been discussed or reported in the medical literature, and, indeed, without pointing to a single independent objective source—other than his own say so—to support its validity. Plaintiff's apparent position is that the novel nature of Dr. Hahn's opinion excuses his lack of any reliable scientific foundation. But this argument is exactly backwards: the one-off and completely unsupported nature of Dr. Hahn's theory does not lessen the need for independent and objective validation, it heightens it.

The lack of reliable scientific support for Dr. Hahn's opinion is all the more glaring in light of Plaintiff's concessions about the well-established decades of peer reviewed literature studying the causes of acute hearing loss and the effect of sound exposure on hearing. Indeed, Plaintiff does not dispute and cannot dispute the following scientifically proven facts:

- *By far* the most common cause of the profound degree of hearing injury—and resulting symptoms—that B.G. sustained is a viral infection, and B.G. sustained his injury at the height of a viral pandemic that caused an unprecedented spike in such injuries, particularly among adolescents. ECF No. 197 at 6.

- A sound pressure of greater than 180 dB is required to cause the profound degree of acute hearing injury B.G. experienced. *See* ECF No. 197 at 7-8.

- The sound pressure level to which B.G. was briefly exposed via the Amber Alert was less than 120 dB, less than 1/1000th the intensity of noise exposure that unanimous peer-reviewed medical literature has determined necessary to cause B.G.'s injuries, and far less than has *ever* been associated with *any degree* of permanent hearing injury. *See* ECF No. 197 at 7-8.

Putting these well-established facts about hearing injuries aside, Dr. Hahn's opinion hinges entirely on pure speculation about the temporal connection between B.G.'s exposure to the Amber Alert and the discovery of B.G's hearing injury. But temporal proximity alone is not enough here, where general causation, i.e., that the exposure can cause the injury, has not been established. In

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC                    - 1 -

APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

fact, the idea that a transient exposure to less than 120 dB could cause acute hearing loss has been uniformly refuted by voluminous peer-reviewed literature studying noise exposure and hearing loss. As Apple's expert Dr. Jackler explains, the temporal proximity indicates only that B.G. became aware of his evolving disease when the Amber Alert played because the viral labyrinthitis made B.G.'s ear more susceptible to sound.

Plaintiff's opposition does nothing to remedy the fatal flaw in Dr. Hahn's opinion—he has no reliable scientific support for his opinion that satisfies the admissibility requirements of Rule 702 and the strictures of *Daubert*. The Court should exercise its gate-keeping function to exclude Dr. Hahn's opinions.

## II.     ARGUMENT

### A.     Plaintiff's Opposition Confirms that Dr. Hahn Has Not and Cannot Offer a Reliable General Causation Opinion.

Plaintiff's opposition concedes that, before ever reaching the issue of specific causation, Plaintiff must first prove general causation—that is, whether the level of sound exposure to which B.G. was exposed from an Amber Alert via his AirPods Pro was capable of causing the profound, traumatic hearing injury—and resulting symptoms—that B.G. experienced. *See* ECF No. 210 at 15-16. For multiple reasons, Dr. Hahn is neither qualified nor capable of offering any reliable opinion on general causation, and nothing in Plaintiff's opposition to Apple's motion suggests otherwise.

#### 1.     Dr. Hahn is Not Qualified to Opine on General Causation.

As set forth in Apple's motion, Dr. Hahn—as a clinical surgeon who has never conducted or published any research on the topic of hearing loss causation—is simply not qualified to offer a general causation opinion in this case. Plaintiff's only response is to say that Dr. Hahn is a clinical physician and a licensed otolaryngologist. *See* ECF No. 210 at 4. Whatever his strengths as an ear surgeon, Dr. Hahn's clinical experience does not render him qualified to "give an opinion on [general] causation," as he has "not published any research" on the topic of hearing loss causation and "does not have any specialized epidemiology training." *See In re Bextra and Celebrex Marketing Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007);

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC    - 2 -    APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

*see also Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*") (excluding general causation opinion where physician had not previously researched or studied the relevant causation issues prior to litigation). Dr. Hahn's lack of expertise in, or engagement with, the scientific literature and epidemiological data regarding hearing loss causation renders him unqualified to offer his opinions at trial.

**2.   Plaintiff's Opposition Confirms that Dr. Hahn Did Not Undertake Any Analysis of General Causation.**

Even if Dr. Hahn were qualified to formulate a reliable opinion on general causation through the application of the Bradford Hill criteria, he did not do so in this case. Indeed, as Dr. Hahn himself admitted, his only focus in this case was to assess B.G.'s individual symptoms as part of his inquiry into specific causation. ECF No. 196-2, Exhibit I at 88:17-89:7; 165:9-166:9.

To establish general causation, Plaintiff must prove that a 10-second exposure to noise stimulus that never exceeded 113.5 dB can cause the sudden, profound hearing injury—and resulting symptoms—that B.G. experienced. When confronted with the fact that Dr. Hahn has not and cannot formulate such an opinion (*see* ECF No. 197 at 17-19), Plaintiff merely states that "Dr. Hahn has testified at length that acoustic shock is capable of causing hearing loss, dizziness, pressure and ear pain [] and that perilymphatic fistula is capable of causing tinnitus, vertigo, dizziness, ear fullness, and hearing loss." ECF No. 210 at 15.

Plaintiff's response is legally irrelevant. Whether or not certain conditions (e.g., perilymphatic fistula) can result in certain symptoms (e.g., hearing loss) says nothing about whether a seconds-long exposure to a sound that never exceeded 113.5 dB is capable of causing those conditions in the first place. That is the question that is relevant to a general causation analysis, and one that Dr. Hahn has wholly failed to address.

**3.   Any General Causation Opinion that Dr. Hahn Purports to Offer is not Reliable Under Controlling Ninth Circuit Precedent.**

Plaintiff concedes that she cannot establish that Dr. Hahn's proffered testimony "gr[ew] out of pre-litigation research or that [Dr. Hahn's opinion] has been subject to peer review," which are the "two principal ways the proponent of expert testimony can show that the evidence satisfies the

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC                                                    - 3 -

APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

first prong of Rule 702." *See Daubert II*, 43 F.3d at 1318; *cf.* ECF No. 210 at 16 (acknowledging there is no literature establishing that perilymphatic fistulas can be caused by noise exposures anywhere similar to that B.G. experienced). Nor could Plaintiff do so, of course, there is no published research or literature that supports Dr. Hahn's purported opinion on general causation. As a result, "[t]he opinions proffered by [Dr. Hahn] do not, to understate the point, reflect the consensus within the scientific community." *Daubert II*, 43 F.3d at 1314 (affirming exclusion of causation expert). That alone should end the Court's inquiry, as Dr. Hahn's failure to "testify on the basis of the collective view of his scientific discipline" or at the very least "take issue with his peers and explain the grounds for his differences" renders his testimony "inadmissible as a matter of law." *Id.* at 1319 (quoting *Turpin v. Merrell Dow Pharm. Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992).

### 4. Dr. Hahn's So-Called Differential Diagnosis is not a Sufficient or Reliable Substitute for an Opinion on General Causation.

Undeterred by the lack of any objective scientific research or data supporting Dr. Hahn's purported general causation opinion in this case, Plaintiff claims in her opposition that the "general causation requirement…has been satisfied by Dr. Hahn's differential diagnosis." *See* ECF No. 210 at 15-16. For multiple reasons, Plaintiff's argument fails.

#### a. Dr. Hahn Cannot Use a Differential Diagnosis to Establish General Causation.

Dr. Hahn's attempt to rely on his purported differential diagnosis to establish general causation fails as a matter of both law and logic, as Dr. Hahn's inclusion of B.G.'s acute exposure to an Amber Alert as among the potential causes of B.G.'s traumatic injury improperly *assumes* that a brief exposure to sound levels under 120 dB is capable of resulting in such an injury. Yet, as set forth in Apple's motion, applicable case law makes clear that a differential diagnosis cannot be used to establish general causation in the manner Plaintiff suggests. ECF No. 197 at 17-19; *see also In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 892 (C.D. Cal. 2004) (holding that it is "important to note…that [a] differential diagnosis cannot demonstrate general causation"). Because a reliable differential diagnosis may include as potential causes only

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC    - 4 -    APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

those previously established as being "generally capable of causing the patient's symptoms" (*Clausen*, 339 F.3d at 1057-58), an expert cannot use the differential diagnosis itself "to prove general causation." *In re Incretin-Based Therapies Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1051 (S.D. Cal. 2021) ("*In re Incretin*") (excluding causation expert and holding it was improper for expert to have used a differential diagnosis to prove general causation).

Plaintiff's opposition fails to engage meaningfully with or differentiate this well-settled law and suggests instead that a differential diagnosis can itself be used to establish general causation in the absence of any peer-reviewed scientific research supporting a general causation finding. *See* ECF No. 210 at 15-17. In support of that argument, Plaintiff primarily relies on two cases—*Clausen* and *Wendell*—neither of which allows Dr. Hahn to substitute his purported differential diagnosis for the peer-reviewed medical literature and epidemiological data courts routinely hold are necessary to establish general causation.

Together, the cases cited by Plaintiff address an inapplicable and rare exception to the requirement that an expert rely upon peer-reviewed scientific literature. This exception only applies to unique and limited circumstances where either a disease is so rare, or an allegedly harmful exposure is so uncommon, that there is a complete absence of peer-reviewed scientific literature on the topic. *See In re Incretin*, 524 F. Supp. 3d at 1050. As the Court noted in *Wendell*, because the disease at issue was "an exceedingly rare cancer, with only 100 to 200 cases reported since it was first recognized," it was "not surprising that the scientific community has not invested substantial time or resources into investigating the causes of such a rare disease." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1236 (9th Cir. 2017). Similarly, in *Clausen*, the Ninth Circuit opined that there were "good reasons why there is a paucity of literature with respect to the particular scientific theory at issue … [because] oil spills, fortunately, are a rare enough occurrence, and the opportunities for scholarly research are few." *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049, 1060 (9th Cir. 2003), as amended on denial of reh'g (Sept. 25, 2003).

But even then, the proffered expert must establish at minimum: (1) that "peer review and publication are absent" on the injury mechanism and exposure at issue, such that there is *no*

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC                                        - 5 -                     APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

*published literature* for an expert to rely upon (*Clausen*, 339 F.3d at 1056); and (2) there must be "good reasons why a scientific study has not been published" on the injury mechanism at issue, such that the injury itself is so rare, or the allegedly causative exposure so uncommon, that it is of limited interest to researchers. *Id.* at 1056 (citing *Daubert II*, 43 F. 3d 1318, n.9).

Neither circumstance is present in this case. Unlike the rare cancer at issue in *Wendell*, every year approximately 66,000 people in the United States alone are diagnosed with sudden sensory hearing loss like that experienced by B.G. *See* ECF No. 197 at 6. And, unlike the rare oil spill exposure at issue in *Clausen*, exposure to sound pressure levels similar to those experienced by B.G.—including through in-ear earphones like the AirPods Pro—happen *hundreds of millions of times a day* around the world. *See* ECF No. 197 at 12 (Dr. Hahn admitting that there are hundreds of millions of users of in-ear headphones and there has never been a report of any injury similar to that experienced by B.G.). "Further distinguishing this case from *Wendell* and *Clausen*, the causal relationship between [noise exposure] and [hearing injury] has for several years been the topic of various scientific, medical and regulatory examination, resulting in numerous animal and clinical studies and peer-reviewed literature." *See In re Incretin*, 524 F. Supp. 3d at 1051. Because the "dearth of studies and literature in *Wendell* and *Clausen* are simply not present here," the Court should "reject[] Plaintiffs' contention that they are entitled to a differential diagnosis to prove general causation in this case." *Id.* (declining to "accept Plaintiffs' invitation to interpret the Ninth Circuit's decisions in [those cases] as permission to excuse an expert's failure to consider relevant animal and epidemiological studies where it exists.").

**b.    Even in the Absence of Peer-Reviewed Literature, Some Objective Validation of Dr. Hahn's Opinion is Required.**

Even if this case were akin to *Clausen* and *Wendell*, and the relationship between exposure to sound pressure levels and hearing injuries had never before been studied or established in the medical and scientific literature—a proposition that could not be more divorced from reality—Dr. Hahn would still be required to support a causation opinion with reference to "some objective source," rather than just his own say so. *See Daubert II*, 43. F3d at 1319; *see also Clausen*, 339 F.3d at 1056 ("[W]here peer review and publication are absent, the experts must explain precisely

3:22-CV-02900-JSC                             - 6 -                             APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

how they went about reaching their conclusions and point to some objective source" such as a "learned treatise" or a "published article in a reputable scientific journal."). Even in *Clausen*, for example, the Court noted that the causation expert was able to support his opinion by reference to "objective, verifiable evidence," including "government reports," relevant scientific literature, and studies showing the effect of oil exposures on shellfish. *Clausen*, 339 F.3d at 1059-60. And in *Wendell*, the Court found significant that the causation expert "did rely on other published studies and articles," including "case reports" from which the expert prepared a "statistical analysis" evaluating causation. *Wendell*, 858 F.3d at 1236-37.

Here, Dr. Hahn relies upon no such "objective, independent validation" of his opinions. *See Daubert II*, 43 F.3d 1316. Nor could he, as "every published study here and abroad—and there have been many—concludes that [B.G.'s alleged exposure] is not [capable of causing his injury]." *See id.* at 1314. Instead, Plaintiff's argument appears to be that—so long as Dr. Hahn has come up with a theory so off-the-wall that it has never been deemed worthy of engagement by any reputable scientist—Dr. Hahn can bypass the requirements of *Daubert* and present it to a jury on the basis of his own say so. But an "expert's bald assurance of validity is not enough." *Id.* at 1316.

### c. Dr. Hahn's Sole Reliance on the Temporal Connection between the Amber Alert and the Discovery of B.G.'s Symptoms is Misplaced.

Plaintiff's opposition hinges on the temporal connection between B.G.'s exposure and the discovery of his ear injury, suggesting—incorrectly—that two events happening close in time establish can establish a causal relationship in the absence of any epidemiologic or other "objective, verifiable evidence" establishing general causation. *Clausen*, 339 F.3d at 1059-61. Plaintiff's reliance on the temporal connection in her effort to salvage Dr. Hahn's opinion is misplaced.

Plaintiff first claims that Apple failed to "address the glaring temporal connection." ECF No. 210 at 7. Apple did no such thing. In fact, Dr. Jackler discussed at length how B.G.'s viral labyrinthitis made B.G.'s ear more susceptible to sound, causing the Amber Alert to alert B.G. of the disease evolution in his ear. ECF No. 196-2, Exhibit H at ¶¶48, 132-134. But, as Dr. Jackler explained, the AirPods Pro "neither caused [the damage] nor altered its trajectory." *Id.* at ¶134.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC   - 7 -   APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

More to the point, a temporal connection between an exposure and an injury is relevant to the determination of general causation only in the absence of any objective, verifiable evidence supporting general causation. *Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F. Supp. 981, 1004 (C.D. Cal. 1996). This much is obvious: if decades of undisputed medical research established—as it does here—that the alleged exposure is incapable of causing the alleged injury, no degree of temporal proximity could establish general causation. Indeed, there is *no case* in which temporal proximity alone has been held sufficient to establish general causation. Rather, even the cases Plaintiff cites, which deal primarily with *specific* causation, hold only that a temporal connection can support an inference of causation where (a) there is some objective verifiable evidence establishing general causation; and (b) where there is *no other potential explanation* for the injury. *See, e.g.*, *Platt* v. *Holland Am. Line Inc.,* NO. 20-00062, 2023 WL 2938172, *6-7 (W. D. Wash. Apr. 13, 2023) (finding temporal connection between electrical shock and seizure supported inference of specific causation where there was evidence establishing that "electrocution has been known to cause seizures" and where there was "no other causal explanation" for the injury in the record).

As Dr. Hahn himself admits, his opinion is based *entirely* on the temporal connection between the Amber Alert and B.G.'s discovery of his injury. This is insufficient to establish general causation. *See* ECF No. 196-2, Exhibit I at 88:17-89:7 ("Q: Can you explain for us, please, how then a relatively brief exposure to sound…was nonetheless capable of rupturing the [inner ear]…?" "A… [W]hat we do know is that immediately after the tone came through his ear he had symptoms consistent with [PLF]. Q: Anything else? A: **I think that's it**."). Dr. Hahn's causation opinion must also be excluded, then because "at bottom his opinion is founded primarily on the temporal connection between the [exposure] and the development of [B.G.'s symptoms] as well as on his subjective, unverified belief that [the exposure] can cause the types of injuries from which [B.G.] suffers. This is not the method of science." *Sanderson*, 950 F. Supp. at 1004 (quotation marks omitted); *see also Daubert II*, 43 F. 3d at 1319 (affirming exclusion of expert where causation opinion was based only on expert's review of medical records, from which he determined the timing

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC   - 8 -   APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

between the alleged exposure and injury).

### d. Dr. Hahn's Observation that the AirPods Pro "Sit in the Ear" Cannot Save his Baseless Opinion.

Dr. Hahn's final effort to justify his differential diagnosis and by extension his general causation opinion, does nothing other than highlight the completely baseless nature of his proffered testimony. Dr. Hahn concedes that nobody has ever determined—or even suggested—that brief exposures to sound levels below 120 dB are capable of causing the types of injuries B.G. sustained. Yet, Dr. Hahn then implies that, because the AirPods Pro "sit in the ear and [allegedly] seals," the *effect* of the sound pressure level the AirPods Pro emits must somehow be different that effect of an equivalent sound pressure level emitted by a different source, thereby supporting his differential diagnosis. ECF No. 210 at 18. For multiple reasons, this Hail Mary fails.

First, it's flat wrong, as Plaintiff's own audio engineering expert, Dr. Casali, concedes. The peak sound pressure level measured by Plaintiff's experts and relied upon by Dr. Hahn for his causation opinion—113.5 dB—was measured by Dr. Casali using specific tools which "enabled the AirPod[s] Pro to be securely fitted to the concha and ear canal" of the test device, permitting a measurement that "**closely mimics a human ear**." ECF No. 208-8, Casali 7.26.24 Report at 9 (emphasis added). Dr. Hahn's suggestion that the interaction between the AirPods Pro and an ear would somehow change the sound pressure level they emit is without foundation and, as demonstrated by Plaintiff's experts' own testing, completely contrary to all available evidence. Instead, Dr. Hahn's theory appears to be just another example of his lack of scientific rigor in the service of this litigation.

Second, yet unsurprisingly in light of the foregoing, Plaintiff admits that there is *zero* scientific or medical literature or support for Dr. Hahn's conjecture. ECF No. 210 at 16-18. Instead, Plaintiff claims that it is somehow Apple's obligation to *disprove* Dr. Hahn's wild speculation. *Id.* Aside from the fact that Dr. Casali, Plaintiff's own expert, disproves Dr. Hahn's theory, Plaintiff's argument ignores that it is she—as the proponent of Dr. Hahn's testimony—who bears the burden of establishing its reliability by reference to objective, independent sources of validation. *Daubert II*, 43 F.3d at 1320. Instead, the Court has "been presented with only the

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC — - 9 -

APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

experts' qualifications, their conclusions, and their assurances of reliability. Under Daubert, that is not enough." *Id*. at 1319.

Finally, Dr. Hahn's theory that Bluetooth wireless earphones are somehow different in the way they deliver sound, so that decades of scientific and medical literature do not apply to them, is fanciful and entirely unsupported by reference to any independent, objective source. Indeed, such devices have been used by hundreds of millions of users on a daily basis for years. Never once has such an incident been reported, nor has Dr. Hahn's theory ever been deemed worthy of comment. ECF No. 196-2, Exhibit I at 48:12-25; 49:15-50:4.

### B. Dr. Hahn's Specific Causation Opinions are Unreliable and Inadmissible.

Even if Dr. Hahn had offered a reliable opinion on general causation, his opinions must still be excluded, as Plaintiff's opposition fails to demonstrate that Dr. Hahn's purported differential diagnosis provides a reliable basis for his opinion on specific causation.

First, Plaintiff's opposition doubles down on Dr. Hahn's failure to reliably exclude by far the most common cause of B.G.'s hearing injury: a virus. As Apple points out in its motion, and as confirmed by Plaintiff's own opposition, Dr. Hahn's purported "ruling out" of COVID as the cause of B.G.'s injury is based on a demonstrably false assumption that B.G. had "no symptoms associated with a viral illness." ECF No. 210 at 8-9. Yet Plaintiff's opposition fails to explain how Dr. Hahn's opinion is consistent with either the fact that many people infected with COVID-19 do not exhibit any symptoms at all or with the fact that hearing loss itself *is* a symptom—and often the *only* symptom—of COVID. *See* ECF No. 197 at 25. In fact, Plaintiff's opposition goes a step further, arguing that COVID could be ruled out because there was an "absence of a positive COVID-19 test" (ECF No. 210 at 1), wholly ignoring the fact that there was no community testing for COVID available in the early stages of the pandemic when B.G. sustained his injury. ECF No. 196-2, Exhibit H at ¶46. Because the basis on which Dr. Hahn's reported "ruling out" of COVID is demonstrably false, his differential diagnoses is inherently unreliable. *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014) (holding expert must "provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC    - 10 -    APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

those hypotheses must be founded on more than subjective believes and unsupported speculation.").

Second, Plaintiff's opposition had no response to the fundamental contradiction that underlies the entirety of Dr. Hahn's specific causation opinion. Dr. Hahn admits that the noise exposure B.G. experienced from the Amber Alert was insufficient to cause *any* "acoustic trauma" to his inner ear. ECF No. 197 at 22-23. Yet Dr. Hahn nonetheless claims that the Amber Alert somehow caused a devastating traumatic injury—which Dr. Hahn concedes is a type of acoustic trauma—to the structures of the inner ear. *Id.* And it did this, according to Dr. Hahn, without leaving any sign of physical injury or damage to B.G.'s ear at all. *Id.* at 8. Rather than attempt to explain how this biological impossibility—one never before reported in the literature—could possibly be justified, Plaintiff simply ignores it. But this Court cannot ignore Dr. Hahn's intention to "offer[] two different opinions which [are] contradictory in material parts." *See Cano v. Continental Airlines Inc.*, 193 Fed. Appx. 665, 666 (9th Cir. 2006).

Finally, Plaintiff's claim that Dr. Jackson somehow supports Dr. Hahn's specific causation opinion is false and misleading. Dr. Jackson testified that he would consider the Amber Alert to have been a potential cause of B.G.'s hearing injury only if it exceeded the known threshold for such injury as established in the published medical and scientific literature. Specifically, when informed that the Amber Alert never exceeded even 120 dB, Dr. Jackson admitted that such an exposure would *not* have been sufficient to cause B.G.'s injuries, placing Dr. Jackson in line with the unanimous opinion of every other medical professional in the world—and directly against Dr. Hahn's singular opinion to the contrary. *See* ECF No. 196-2, Exhibit L at 37:25-38:12. Moreover, Dr. Jackson further admitted that he could not reliably rule out a viral cause of B.G.'s injury (*id.* at 28:14-18; 31:14-19), thereby further undercutting Plaintiff's reliance upon Dr. Jackson to support Dr. Hahn's specific causation opinion. *See Johnson v. City of San Jose*, No. 21-CV-01849-BLF, 2023 WL 8852489 at *9 (N.D. Cal. Dec. 21, 2023) (holding that specific causation opinion, to be admissible, must reliably rule out reasonable alternative causes).

C. **If Any Questions Remain, the Court Should Hold a *Daubert* Hearing to Address Them.**

Should the Court have any doubts about excluding Dr. Hahn's opinion, Apple invites the

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC — - 11 -

APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING

Court to hear from both Dr. Jackler and Dr. Hahn directly. Plaintiff's resistance to such a *Daubert* hearing is telling, as it suggests a reluctance to have the Court receive testimony regarding the singular and unsupported nature of Dr. Hahn's opinions. However, Apple believes that, should questions remain regarding the admissibly of Dr. Hahn's proffered opinions, the Court may benefit from hearing from the parties' experts directly, and requests an evidentiary hearing for that purpose.

### III.  CONCLUSION

For the foregoing reasons, and those set forth in its Motion, Apple respectfully requests that the Court grant Apple's Motion to Exclude and enter an order precluding Plaintiff from offering Dr. Hahn's general and specific causation opinions at trial.

Dated: March 19, 2025.                    **ARENTFOX SCHIFF LLP**

By: _/s/ Sara Taylor Schneider_
Thomas M. Crispi
Sara T. Schneider
Stephen Copenhaver

Attorneys for Defendant
APPLE INC.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

3:22-CV-02900-JSC    - 12 -    APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE CAUSATION OPINIONS OR, IN THE ALTERNATIVE, FOR A *DAUBERT* HEARING